■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THANH V. NGUYEN, Appellant. [935 NYS2d 195]—

Spain, J.

At defendant's nonjury trial, Thomas Walczak, an undercover investigator with the State Police assigned to the Community Narcotics Enforcement Team, testified that he called defendant's cell phone on March 25, 2009 and arranged to meet him at

a fast food restaurant in the Village of Endicott, Broome County, where defendant sold him 10 glassine envelopes of heroin for $170. On the morning of March 31, 2009, defendant again sold heroin to Walczak, who paid defendant with $170 in prerecorded (and photocopied) buy money. Later that evening, around 7:00 P.M., defendant, for a third time, sold 10 envelopes of heroin to Walczak, who again paid with $170 in prerecorded buy money. Defendant was arrested within minutes, after Walczak confirmed that the Village of Johnson City police officers had the correct person in custody. Upon defendant's arrest, police recovered on or near defendant $180 in prerecorded buy money, $4,450 in cash, defendant's cell phone, a padlock tied to a tubesock, packets of heroin and a small amount of cocaine. Defendant was convicted, as charged in an indictment, of two counts of criminal possession of a controlled substance in the third degree and three counts of criminal sale of a controlled substance in the third degree (hereinafter the drug trial).

Defendant was also separately indicted, and convicted after a separate nonjury trial, of burglary in the first degree, assault in the second degree and petit larceny (hereinafter the burglary trial). Those charges stem from defendant's conduct at around 11:20 P.M. on March 31, 2009, while under police surveillance following his drug sale to Walczak earlier that morning. Defendant went to the home of Timothy Kinne to confront him about a camera, the ownership of which was disputed. Kinne testified that he was home alone, in the shower, when defendant entered through an unlocked door, Kinne exited the shower and defendant shoved the bathroom door into Kinne's chest. An altercation ensued and Kinne recounted that defendant again slammed the door into him, hit him with a padlock tied to a tubesock, threatened him, demanded money and then left, taking Kinne's cell phone. Defendant testified, admitting that he went to Kinne's home angry at him, entered without permission and confronted Kinne, pushing the door into Kinne to scare but not hurt him; however, he claimed Kinne attacked him and they fought, but he denied hitting Kinne with the padlock.

Upon all of his convictions, defendant was sentenced as a second felony offender (a second violent felony offender on the burglary conviction) to concurrent sentences, the maximum aggregate being 16 years with five years of postrelease supervision. Defendant now appeals, contending that he was deprived of the effective assistance of counsel, pointing to a litany of alleged errors committed by his retained counsel at both nonjury trials.

Upon our review of the record of each nonjury trial, viewed in

totality, we find that defendant was afforded meaningful representation (*see People v Henry*, 95 NY2d 563, 565 [2000]; *People v Benevento*, 91 NY2d 708, 712 [1998]). Any omissions or imperfections in counsel's representation were not so egregious as to deprive defendant of a fair trial (*see People v Flores*, 84 NY2d 184, 187 [1994]).

Initially, defendant's contention that counsel failed to advise him of his right to testify before the grand jury that indicted him on the drug charges lacks merit, as the record reflects that counsel had not yet been retained on the drug charges when the case was presented to the grand jury and the indictment was handed up on June 30, 2009. There are no facts in the record to support a claim that defendant was deprived of his right to appear (*see* CPL 190.50 [5]). Also, in view of the five-count drug indictment and the imminent burglary indictment (handed up the next day), as well as defendant's extensive criminal history, counsel's decision on July 6, 2009 not to contest County Court's two-day remand of defendant without bail, and his deference to the court at the next appearance on July 8 as to the appropriate bail, was not an unreasonable strategy. Indeed, while the People requested continued remand without bail, citing defendant's many prior felonies, his sentencing exposure and flight risk, the court set reasonable bail and no prejudice to defendant is demonstrated (*see* CPL 530.40).

To the extent that defendant claims that County Court inadequately responded to his expressed dissatisfaction with and desire to fire his retained counsel at a November 23, 2009 pretrial (burglary) appearance, we note that the court clearly informed defendant of his right to retain substitute counsel, and the record does not indicate that defendant ever did so. Thus, defendant was not deprived of the right to representation of his own choosing (*see People v Mack*, 39 AD3d 882, 884 [2007]). Counsel's refusal to join or support defendant's successive pro se speedy trial motions, made repeatedly throughout the proceedings and trials, was likewise justified. As the court meticulously explained to defendant, the People satisfied the requirement that they declare their readiness to go to trial within six months of the commencement of the prosecution (*see* CPL 30.30), and no facts appeared in the record to support a constitutional speedy trial claim (*see* CPL 30.20). Counsel had no obligation to present or support patently meritless motions (*see People v Caban*, 5 NY3d 143, 152 [2005]).

Concerning counsel's decision to forgo certain suppression motions, defendant has not "demonstrate[d] the absence of strategic or other legitimate explanations" for counsel's choices

(*People v Rivera*, 71 NY2d 705, 709 [1988]; *see People v Caban*, 5 NY3d at 152). For example, at the burglary trial, which was held first, counsel withdrew defendant's motion to suppress defendant's statement to police and the physical evidence seized upon his arrest, and his request for *Huntley* and *Mapp* hearings, believing that they were in part exculpatory, and defendant agreed on the record. Moreover, no colorable basis appears on this record for counsel to pursue a challenge to the legality of defendant's arrest or the search of his person incident to his arrest (and seizure of evidence), or to contest the judicial search warrant issued to allow a search of the contents of defendant's cell phone seized at the time of his arrest; nor does there appear to be any likelihood of success on such motions. Indeed, County Court indicated that had counsel not withdrawn the motions, it would have denied them without hearings because there were insufficient facts to support them (*see People v Phelan*, 82 AD3d 1279, 1282 [2011], *lv denied* 17 NY3d 799 [2011]).

Regarding defendant's contention that counsel should have moved to dismiss the indictment because the People's opening statement at the burglary trial was inadequate in failing to allege that defendant's entry into Kinne's home was unlawful (*see* Penal Law § 140.30; CPL 260.30 [3]), we are not persuaded that this constituted ineffective assistance. Given that this was a nonjury trial, the prosecutor was not required to deliver an opening statement (*see* CPL 320.20 [3] [a]) and, even if the opening statement had been inadequate, the remedy—had counsel objected—would have been to afford the prosecutor "an opportunity to rectify any defect" (*People v Ward*, 42 AD3d 579, 581 [2007], *lv denied* 9 NY3d 883 [2007]; *see People v Kurtz*, 51 NY2d 380, 386 [1980], *cert denied* 451 US 911 [1981]). As the record demonstrates that County Court, sitting as factfinder, was well aware of this element of burglary, no prejudice occurred. Likewise meritless is defendant's claim that counsel misstated the grounds for a motion to dismiss at the close of the People's case (*see* CPL 290.10 [1]) and, in view of the legally sufficient evidence adduced to establish the charged offenses, counsel's failure to make the motion with specificity so as to preserve claims for appeal did not prejudice defendant (*see People v Finger*, 95 NY2d 894, 895 [2000]).

Defendant also submits that counsel was ineffective for failing to request the lesser included offense to burglary in the first degree of criminal trespass in the second degree under Penal Law § 140.15 (1), which he argues he could have been convicted of if the factfinder concluded that he did not enter Kinne's dwelling "with intent to commit a crime therein," an element

of the first degree burglary charge (Penal Law § 140.30 [3]). Counsel, however, made the reasonable tactical decision to request that County Court consider burglary in the second degree (*see* Penal Law § 140.25 [2]) as a lesser included offense, on the premise that the padlock tied to a sock was not a dangerous instrument (*see* Penal Law § 10.00 [13]); counsel also requested consideration of attempted assault in the second degree as a lesser included offense of assault in the second degree (*see* Penal Law § 120.05 [2]; § 110.00) in the event that the court found the physical injury to be insufficient to support the higher count (*see* Penal Law § 10.00 [9]). Counsel's strategic decision, albeit unsuccessful, to seek an acquittal on the top burglary count by arguing that defendant did not intend to commit a crime therein but, rather, intended to retrieve the camera to which he believed himself entitled, as defendant testified, and to not leave open a conviction for criminal trespass, was reasonable and such hindsight disagreements will not establish ineffective assistance (*see People v Battease*, 74 AD3d 1571, 1575 [2010], *lv denied* 15 NY3d 849 [2010).

Defendant also points to counsel's failure to pursue a *Rosario* violation, disclosed after the verdict was rendered in the burglary trial, consisting of the People's inadvertent failure to turn over to the defense a brief handwritten note by the State Police investigator who took defendant into custody after his arrest. The notes were incorporated into the CPL 710.30 notice provided to defendant prior to trial. Given counsel's overall adequate performance, his failure to take maximum advantage of this di minimus *Rosario* violation at the postverdict stage of those proceedings did not constitute ineffective assistance of counsel (*see People v Flores*, 84 NY2d at 187-188).

As for the drug trial, defendant has not demonstrated that counsel lacked a legitimate strategic reason for the decisions and omissions he now challenges. Counsel's viable trial strategy included contesting that defendant made the sales, but conceding the nature of the substances sold to Walczak and stipulating to the lab report results. Counsel's waiver of a *Wade* hearing was supported by case law establishing that summary denial of a hearing is appropriate for confirmatory identifications, i.e., "identifications made by undercover police officers who participate in planned buy-and-bust operations after a face-to-face purchase, to confirm that backup officers apprehended the right suspect" (*People v Allah*, 57 AD3d 1115, 1117 [2008], *lv denied* 12 NY3d 780 [2009]; *see People v Boyer*, 6 NY3d 427, 432 [2006]). Counsel's closing statement was adequate, focusing on the discrepancies in the proof, e.g., the lack of any independent

eyewitnesses (other than the purchasing undercover officer) to the transactions or fingerprint evidence, all in line with the defense theory that defendant had been misidentified as the seller. The remarks made at sentencing urging County Court to impose the mandatory minimum sentence and not penalize defendant for rejecting numerous generous plea offers (against counsel's advice), while reflecting counsel's frustration with defendant's perceived poor choices and disruptive conduct during the proceedings, were nonetheless reasonably aimed at obtaining favorable sentencing treatment.

Overall and viewed in totality, we find that defendant received meaningful representation, engaging in ongoing fruitful plea negotiations, pursuing pretrial discovery, fully participating in both trials, appropriately cross-examining witnesses and emphasizing any shortcomings in the proof, and pursuing a cogent defense theory in the face of overwhelming evidence of guilt. Defendant received fair trials and the verdicts were the product of the compelling evidence against him and not in any respect the result of counsel's deficient performance.

Mercure, A.P.J., Peters, Rose and Kavanagh, JJ., concur. Ordered that the judgments are affirmed.